United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GFI COMMERCIAL MORTGAGE LLP,<br><br>   Debtor.<br>_____/ | No. C 12-03956 SI<br>Related Case No. C 12-04214 SI |
| CLASS B LIMITED PARTNER COMMITTEE,<br><br>   Appellant,<br>   v.<br>MEYERS LAW GROUP, P.C. and MERLE C. MEYERS,<br>   Appellees.<br>_____/ | **ORDER AFFIRMING DECISIONS OF THE BANKRUPTCY COURT** |

Now before the Court is an appeal by the Class B Limited Partner Committee from three orders entered by the Hon. Thomas E. Carlson of the Bankruptcy Court for the Northern District of California: (1) Order Granting Motion for Orders Approving Distribution of Assets, Approving Actions of Liquidators, Approving Payments of Fees and Expenses, and Closing the Case; (2) Order Approving First and Final Application of Meyers Law Group, P.C. for Allowance of Compensation and Expenses as Former Counsel for Liquidator and Class B Limited Partner Committee; and (3) Order Denying Committee's Motion to Disallow Fees and to Require Disgorgement by Meyers Law Group, P.C. This Court has jurisdiction under 28 U.S.C. § 158(a). Upon careful consideration of the parties' papers, the Court AFFIRMS the bankruptcy court's orders for the reasons discussed below.

**BACKGROUND**

GFI Commercial Mortgage, L.P. ("GFI") was a partnership that owned commercial mortgages and issued bonds based on those mortgages. Appellant's Excerpts of Record on Appeal ("R.") at 128:21-27. GFI filed for chapter 11 bankruptcy on September 30, 1996. Two years later, the bankruptcy court issued an order confirming the debtor's second amended plan of reorganization ("Plan").

The Class B Limited Partners are "the remaining stakeholders in the Reorganized Debtor and the only interested parties in the distribution of assets of the Reorganized Debtor's Estate" after its debt had been paid in full. R. at 347:5-7. According the to Plan, the Class B Limited Partner Committee ("Committee") was formed to represent the common interests of the Class B Limited Partners and consisted of three members who would initially serve three-year terms. R. at 121:17–27.

The Plan contains several provisions relevant to the parties' dispute in this appeal. First, it provides that John F. Sampson was to serve as the Liquidator. R. at 42:23-26. The Plan also empowers both the Committee and the Liquidator to employ certain professionals, such as attorneys, to assist with fulfilling their obligations under the Plan. *See* Plan, Section VII(L)(f), R. at 124:1-7; *see also* Section V(F)(5)(b), R. at 100-101. The Plan required that compensation for those professionals be reasonable and subject to a cap, which could be modified by the bankruptcy court. R. at 124:8–16. The Plan further provided a system whereby the Liquidator and the Committee could submit invoices for professional services to each other. R. at 100:11–101:22; 124:17–125:25.

As provided for by the Plan, the Committee retained the law firm of Goldberg, Stinnett, Meyers & Davis ("Goldberg Firm") in July 1998. Mr. Merle C. Meyers was a member of the Goldberg Firm and served as primary counsel for the Committee. To save costs, Mr. Meyers and the Goldberg Firm were simultaneously engaged to represent the Liquidator. In October 1998, the Committee filed a motion in the bankruptcy court to modify the Plan's cap on professional fees. In their moving papers, the parties disclosed that the Goldberg Firm "provid[ed] legal representation to the Committee and assist[ed] the Committee with respect to its obligations and rights under the terms of the Plan." R. at 293:24–294:6. With respect to his simultaneous representation of the Liquidator, Meyers testified:

2

> The Goldberg Firm has also been called upon to represent the Liquidator in certain discrete matters, where the Committee and the Liquidator concluded that it would be most cost-effective for such firm to render necessary services. For example, to the extent that the Liquidator has needed legal advice as to the pending chapter 11 case of Henry Grausz, a judgment debtor of the Debtor, the Goldberg Firm has provided that advice. In addition, because the Debtor's general counsel has asked to withdraw from remaining matters in which it has previously represented the Liquidator, it is anticipated that the Goldberg Firm may assist the Liquidator with respect to one or more of those matters as well.

R. at 296:13–23. The bankruptcy court granted the motion to modify the cap in an order dated October 26, 1998. R. at 299-301.

The Goldberg Firm's representation of the Committee and the Liquidator was terminated in July 2007, when Mr. Meyers left the Goldberg Firm and formed Meyers Law Group, P.C. ("MLG"). MLG subsequently was engaged to represent the Committee and the Liquidator, doing so simultaneously until 2010, when a disagreement as to the best disposition of a judgment against judgment debtor Henry Grausz arose. At that point, MLG informed both clients of the conflict and thereafter ceased to represent either client. The Liquidator and the Committee subsequently retained separate counsel. After the Committee's new counsel, Mr. John Warner, reviewed various documents turned over to him by MLG, Mr. Warner informed MLG that it was his opinion that there had been a conflict of interest all along and that all fees paid to the Goldberg Firm and MLG were unauthorized by the Plan. *See* R. at 313-318. The parties exchanged correspondence on the issue and could not come to a resolution. *See* R. at 306-330.

On December 21, 2011, the Committee filed a motion in the bankruptcy court to disallow fees paid to attorney Merle C. Meyers and to require disgorgement of all fees previously paid to him. On December 29, 2011, MLG filed its application for allowance of compensation and expenses as former counsel for the Liquidator and the Committee in the bankruptcy court. That application sought compensation for three invoices that the Committee had refused to pay. R. at 243:6-18. In addition, MLG sought compensation for fees incurred in defending its fees and preparing its fee application. R. at 243:25–244:8. MLG provided a detailed description of its services and billing rates in the application. R. at 245:24–248:19. In response to the Committee's conflict of interest allegation, MLG argued that the Committee had impliedly consented to and waived any alleged conflict of interest arising

3

from the dual representation. R. at 249:16–251:3. In addition, MLG argued that the lack of a written waiver is not a basis for disgorgement. R. at 251:5–20.

On January 27, 2012, the bankruptcy court heard the motion to disallow compensation for MLG The court held:

> With respect to Mr. Meyers, quite apart from whether the Committee knew or not, this Court in entering an order in 1998, lifting the cap, expressly recognized that Mr. Meyers, at that time with the Goldberg Stinnett firm, was representing . . . both the liquidator and the Committee. There was no undisclosed conflict of interest at that point. A conflict, an actual conflict, did arise later, obviously over the distribution of this asset, and Mr. Meyers did the right thing and immediately stopped representing either side. And there's just nothing . . . wrong there. As I say, the order explicitly . . . recognizes his dual representational role.

R. at 591:15–592:2. The bankruptcy court entered orders approving MLG's fee application and denying the Committee's motion to disallow fees and require disgorgement on July 23, 2012. R. at 555; 558. This appeal followed.

**STANDARD OF REVIEW**

This Court reviews the bankruptcy court's findings of fact for clear error. Fed. R. Bankr. P. 8013; *In re Acequia, Inc.*, 787 F.2d 1352, 1357 (9th Cir. 1986). "Under this standard, we accept findings of fact made by the bankruptcy court unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir. 2004). The Court reviews de novo the bankruptcy court's legal conclusions and mixed questions of law and fact. *In re Lee*, 179 B.R. 149, 155 (9th Cir. B.A.P. 1995).

The Court "will not disturb a bankruptcy court's attorney fee determination absent an abuse of discretion or erroneous application of the law." *In re Occidental Fin. Grp.*, 40 F.3d 1059, 1062 (9th Cir. 1994). The bankruptcy court commits an abuse of discretion if it bases its ruling on an erroneous view of the law or clearly erroneous factual findings. *Hansen v. Moore* (*In re Hansen*), 368 B.R. 868, 875 (B.A.P. 9th Cir. 2007). To reverse for abuse of discretion, this Court must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in its conclusion. *Id.*

4

**DISCUSSION**

The Committee's appeal of the three bankruptcy court orders presents three issues: (1) whether Meyers' firms must disgorge previously paid fees and forego presently outstanding unpaid fees if the Court finds that there was an unwaived conflict of interest; (2) whether the fees in this case are excessive; and (3) whether Meyers is entitled to collect fees for defending the fee awards. The Court addresses each in turn.

**1.    Disgorgement and Non-Payment for Violation of CRPC 3-310.**

The Committee argues that Meyers' concurrent representation of both the Liquidator and the Committee required Meyers to secure informed, written consent from each client under the California Rules of Professional Conduct ("CRPC") 3-310. Meyers responds that the Committee knew about and supported the dual representation as did the bankruptcy court. Meyers argues that when an actual conflict of interest arose in 2010, he fulfilled his ethical obligation by withdrawing immediately as counsel for the Liquidator and the Committee.

CRPC 3-310(C)(1) requires an attorney to obtain informed written consent of each client upon "[a]ccept[ing] representation of more than one client in a matter in which the interests of the clients potentially conflict." California Rules of Professional Conduct Rule 3-310 (2003). According to the discussion of CRPC 3-310, "[s]ubparagraphs (C)(1) and (C)(2) are intended to apply to all types of legal employment, including the concurrent representation of multiple parties in litigation or in a single transaction or in some other common enterprise or legal relationship." *Id.*

In a context similar to the present case, a bankruptcy court discussed whether written consent under CRPC 3-310(C)(1) would be required and observed that:

> A conflict of interest is potential if there is no present actual conflict of interest, but there is a possibility of an actual conflict arising in the future, resulting from developments that have not yet occurred or facts that have not yet become known. Whenever an attorney represents two or more clients in the same matter, there is always a potential conflict of interest that triggers the consent requirements of rule 3-310(C)(1). This rule requires the informed written consent of each client every time an attorney represents two or more clients in the same matter.

*In re Jaeger*, 213 B.R. 578, 584 (Bankr. C.D. Cal. 1997). The court held that the duty to secure informed consent from each affected client requires "[m]ore than a remote possibility of a conflict." *Id.* The duty is triggered when a single attorney represents two parties in a matter because of "the very real possibility that the interests of the clients in the litigation may at some point diverge and come into conflict." *Id.* at 585.

Here, Meyers had a potential conflict of interest because he represented two clients – the Liquidator and the Committee – in the same matter, the Liquidator's sale of various assets owned by the debtor so that the proceeds could be distributed to the Committee. All along, there was a significant possibility that the interests of the Liquidator and the Committee could diverge. In 2010, the interests of the Liquidator and the Committee eventually did diverge regarding the best course of action for the Grausz judgment. As the bankruptcy court noted, Meyers took the proper action and stopped representing either side when this conflict arose. Nonetheless, even before this point, the dual representation created a potential conflict of interest that may have required informed written consent under Rule 3-310(C)(1).

Assuming, without deciding, that Meyers' failure to obtain written consent for the *potential* conflict violated Rule 3-310, this violation does not automatically extinguish the Committee's obligation to pay past and presently due fees. Pursuant to Local Rule 11, every attorney before this Court must "comply with the standards of professional conduct required of the members of the State Bar of California." Civ. Local Rule 11–4(a)(1). Accordingly, the Court applies California law in this matter. *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914 (N.D. Cal.2003); *see also Asyst Technologies v. Empak, Inc.*, 962 F. Supp. 1241, 1242 (N.D. Cal.1997); *Elan Transdermal Ltd. v. Cygnus Therapeutic Systems*, 809 F. Supp. 1383, 1387 (N.D. Cal.1992). Under California law, although an attorney's breach of a rule of professional conduct may warrant a forfeiture of fees, forfeiture is not automatic but depends on the egregiousness of the violation. *Mardirossian & Associates, Inc. v. Ersoff*, 153 Cal. App. 4th 257 (2007) (review denied).

Considering the evidence available, the Court finds that the bankruptcy court did not abuse its discretion in refusing to order disgorgement and non-payment of fees because the alleged violation here

6

was slight, if at all. In fact, the case relied on by the Committee confirms as much. The Committee cites *In re Occidental Financial Group*, 40 F.3d 1059, 1062 (9th Cir. 1994), to argue that Meyers must disgorge fees paid to him while the conflict of interest existed. In that case, the Ninth Circuit affirmed a bankruptcy court's disgorgement order because the attorney's application for fees falsely denied that he had represented any interest adverse to the debtor. The attorney in that case – unlike Meyers – *affirmatively misrepresented* his previous relationship to the debtor and his substantial conflict of interest. *Id.* at 1062–63. The Court reasoned that disgorgement and non-payment of fees are equitable matters committed to the discretion of the bankruptcy court. *Id.* at 1063 (noting that the attorney in the case "did not come to equity with clean hands."). Where there is an unwaived conflict of interest, the Court held that "[a] bankruptcy court may sometimes exercise discretion to make an award for attorneys fees...where the attorney provides a satisfactory explanation for failure to obtain approval in advance and demonstrates that the service significantly benefitted the estate." *Id.* at 1062.

Here, the record is clear that while the conflict may not have been formally waived in writing, it was not *undisclosed* to the Court or to the parties. Judge Carlson explicitly considered the particular circumstances of the dual representation in this case and excused Meyers' lack of explicit waiver because all parties were aware of and consented to the dual representation as early as October 26, 1998, when it was disclosed in court at a hearing on the Committee's motion for modification of the professional fees cap. R. at 591. Moreover, unlike the attorney in *In re Occidental*, nothing in the record indicates that Meyers concealed or misrepresented his dual representation to the court, the Committee, or the Liquidator. According to the Meyers' declaration in 1998, both the Committee and the Liquidator were aware of the dual representation at beginning of the relationship, and *affirmatively chose* this arrangement in order to minimize costs. R. at 296:13–23. In addition, nothing in the record indicates that Meyers's relationship with the Liquidator or the Committee was "tainted with fraud or unfairness." *See In re Song*, 2008 WL 6058782, at *11 (B.A.P. 9th Cir. 2008) (unpublished) (finding that a violation of Rule 3-310 does not mandate a denial of fees, particularly where there is no evidence that the attorney's relationship with the client is "tainted with fraud or unfairness.").

While the Court makes no finding as to Meyers' compliance with Rule 3-310, even assuming

such a violation, given the equities here the bankruptcy court did not abuse its discretion when it denied the motion for disgorgement and approved MLG's fee application.

## 2.  Reasonableness of Attorney Fees.

The Committee argues that the bankruptcy court's approval of Meyers' fee application was an abuse of discretion because (1) the fees were grossly excessive; (2) the billing rates were grossly excessive; (3) Meyers performed his work without a written fee agreement and court approval; (4) under the Plan, all professional fees had to be approved by the Committee or the court; and (5) Meyers allegedly had a conflict of interest.

The "party opposing a fee application must carry the burden of explaining what therein is unreasonable or, at least, what would be reasonable under the circumstances." *Koncicky v. Peterson* (*In re Koncicky*), BAP No. WW-07-1170-MkPaJ, 2007 WL 7540997 (B.A.P. 9th Cir. Oct. 19, 2007) (unpublished) (quoting *In re Blackwood Assocs., L.P.*, 165 B.R. 108, 112 (Bankr. E.D.N.Y. 1994).

Here, the record demonstrates that the amounts awarded were reasonable. In his compensation application, Meyers provided the bankruptcy court with detailed information about his and his colleagues' significant experience in chapter 11 practice. R. at 254-255. He also provided information suggesting that his billing rates were appropriate and consistent with market rates and consistent with the difficult issues this cases present. *Id.* at 239-256. Moreover, contrary to the Committee's claim that Meyers failed to provide a meaningful discussion to justify his fees, Meyers submitted a fee application that includes a detailed description of the services rendered and an itemization of costs and fees. *Id.*

In its appeal, the Committee provides no legal or factual basis for its argument that the fee is excessive or that the bankruptcy court abused its discretion in approving Meyers' fee application. The Committee fails to challenge any particular entries within this fee application or produce evidence controverting that produced by Meyers. Instead, the Committee asserts that the lack of a written fee agreement and Meyers' alleged conflict of interest should limit the fees he can collect. As discussed above, the Plan permitted the Liquidator to retain an attorney and the Committee regularly paid Meyers' invoices for many years after his dual representation was acknowledged in 1998. Thus, to the extent

8

the Committee argues that these fees were unauthorized, its arguments lack merit. And to the extent the Committee challenges the reasonableness of the fee, the Court agrees with the bankruptcy court, which found MLG's fees to be reasonable, notwithstanding the Committee's own subjective dissatisfaction.

Accordingly, the Court finds that the bankruptcy court did not abuse its discretion in awarding reasonable costs and fees.

**3.     Fees on Fees.**

The Committee also argues that the bankruptcy court abused its discretion in awarding MLG fees for defending its fee application. The Committee relies on a single case, *In re Riverside-Linden Investment Co.*, 925 F.2d 320, 324 (9th Cir. 1991), in which the Ninth Circuit held that the bankruptcy court's denial of fees for expenses incurred by a law firm in unsuccessfully defending its final fee application was not an abuse of discretion. That case does not support the Committee's contention here because Meyers, as discussed above, has successfully defended his award of fees. More important, the Ninth Circuit has found that litigation over a fee award in the bankruptcy context is compensable as long as the services meet statutory requirements and "the case exemplifies a set of circumstances where the time and expense incurred by the litigation is necessary . . . ." *In re Wind n' Wave,* 509 F.3d 938, 945–46 (2007) (quotation marks omitted) (explaining that even though the statutes that govern compensation of creditor's and debtor's attorneys are silent on the matter, the purpose of these statutes "would be subverted if the fee award could be diluted through the appeal process."). Here, the legal work was necessary given that the Committee forced MLG into litigation over the fee award, and the Committee was ultimately unsuccessful on the merits of the dispute.

Given these factors, the Court finds that the bankruptcy court did not abuse its discretion in awarding MLG fees for defending its fee application.

///

9

**CONCLUSION**

For the foregoing reasons, the AFFIRMS the bankruptcy court decisions raised in this appeal.

**IT IS SO ORDERED.**

Dated: August 28, 2013

SUSAN ILLSTON
United States District Judge